IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOSEPH L. JOHNSON                                                                           PLAINTIFF

V.                                                                    CIVIL ACTION NO. 3:13-CV-50-LRA

MAJOR J. MILLER, ET AL.                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This cause comes before the Court on Defendants' Motion for Partial Summary [32] as to unexhausted claims, as well as Defendants' Motion for Summary Judgment [34] as to exhausted claims. Having considered the entire record in this matter, the Court concludes that the motions are well-taken and are hereby granted.

BACKGROUND

Plaintiff filed this lawsuit *pro se* and pursuant to 42 U.S.C. § 1983, challenging the conditions of his confinement at the Walnut Grove Correctional Facility (WGCF). [1]. Defendants, Warden Lawrence Mack and Major James Miller, were assigned to work at WGCF. The Court held an omnibus or *Spears* hearing in this matter on April 16, 2014, at which Plaintiff was afforded the opportunity to fully explain his claims.[1] At the hearing, all parties consented to the undersigned deciding this case in its entirety. [27].

Plaintiff alleges that while he was incarcerated at WGCF, he had no working toilet and had to use the bathroom in the showers. According to Plaintiff, the showers were terribly mildewed and this aggravated his asthma. Plaintiff claims that he stayed sick the entire time he was there. Plaintiff

_____

[1]*See Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985).

further alleges that until January 2013, there was no sound on the TV unless you could purchase earplugs at the canteen.  Plaintiff claims that although he had a locker box, he was unable to lock the box to keep his legal papers private.  Plaintiff claims that the day room was extremely cold, but Defendants would not allow him to wear his coat in there.  Plaintiff also alleges that the inmates were never brought cleaning supplies and that he could not clean his own cell and the showers without supplies.

Plaintiff further contends that he has been diagnosed with a heart condition, asthma, bronchitis and an ulcer, and that chemicals used in the zone irritated his illnesses.  He asserts that his bronchitis was caused by Defendants' failure to treat his asthma.  According to Plaintiff, Defendants also failed to treat his heart problems.  He claims that he had chest pains while housed at WGCF and went to the medical unit for treatment.  Plaintiff alleges that Defendants only gave him asthma treatments and baby aspirin.  Additionally, though Plaintiff alleges that he put in a sick call every other week, he claims Defendants would only check his blood pressure and his asthma; they would not give him heart medication.

EXHAUSTION

Defendants contend that Plaintiff failed to exhaust administrative remedies, except with respect to his claims concerning not having a lock, the cell doors being locked when inmates are out of their cells, and not being allowed to wear his jacket in the day room.  Plaintiff argues that he did submit grievances regarding the other matters he has raised, but he has failed to produce any evidence other than one document he represents to be a copy of an amendment to his grievance. [28].

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This statute clearly requires an inmate bringing a civil rights action in this Court to first exhaust his available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Exhaustion is no longer left to the discretion of the district court, but is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion will not be excused when an inmate fails to timely exhaust his administrative remedies; the exhaustion requirement also means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This is so regardless of whether the inmate's ultimate goal is a remedy not offered by the administrative process, such as money damages. *Id.*

Plaintiff admits that he was aware of the grievance process. He successfully completed it with respect to some of his claims. However, as noted *supra*, in response to Defendants' motion the only evidence he has submitted to show compliance with respect to all his claims is what he represents to be a copy of an alleged amendment to his grievance. [28] at 3. This document is not stamped received by WGCF. Moreover, even if this amendment could be construed to cover the remaining claims not covered by the undisputedly filed grievance, this document is dated January 2, 2013. Plaintiff signed the instant lawsuit on January 9, 2013. [1]. Given that his initial grievance took fifty-five days to process [32-1], it is inconceivable that a second grievance regarding entirely

different matters would have been completely processed through two steps in seven days.  The Court

finds that Plaintiff has failed to exhaust administrative remedies, except with respect to the matters

covered by his November 10, 2012 grievance. [32-1] at 5.


LOCKS AND LOCKED DOORS

Defendants have moved to dismiss Plaintiff's claims concerning denial of a padlock and

locking of cell doors for failure to allege a constitutional violation.   The Eighth Amendment

prohibits cruel and unusual punishment of convicted inmates but Defendants contend that Plaintiff's

allegations do not rise to the level of a constitutional violation.

> While the Constitution does not require that custodial inmates be housed
> in comfortable prisons, the Eighth Amendment's prohibition against cruel
> and unusual punishment does require that prisoners be afforded "humane
> conditions of confinement" and prison officials are to ensure that inmates
> receive adequate food, shelter, clothing, and medical care.  In order to establish
> an Eighth Amendment violation regarding conditions of confinement, an
> inmate must establish: first, that the deprivation alleged was sufficiently
> serious (i.e., an official's act or omission must have resulted in the denial of
> "the minimal civilized measure of life's necessities"); and second, that the
> prison official possessed a sufficiently culpable state of mind.  The required
> state of mind for cases related to prison conditions is that the official acted
> with deliberate indifference to inmate health or safety.  Deliberate indifference
> is established by showing that the defendant officials "(1) were aware of facts
> from which an inference of excessive risk to the prisoner's health or safety could
> be drawn and (2) that they actually drew an inference that such potential for
> harm existed."

*Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001)(internal citations omitted).  In this case,

 Defendant Miller signed the first step response to the only grievance of record and Defendant Mack

signed the second step response.  That appears to be the extent of their involvement.

Defendant Mack, in the second step response to Plaintiff's grievance, explained that padlocks

are a major security concern at WGCF.  Inmates could potentially conceal contraband in their locked

boxes and/or use the padlocks themselves as weapons against other inmates or prison staff.  That

Plaintiff may have been allowed a padlock while incarcerated at another facility, as he claims, in no

manner makes WGCF's prohibition of padlocks unconstitutional.  Plaintiff has not alleged that any

other inmate accessed his legal papers, or that any of his personal property was taken.  There is no

evidence that denying Plaintiff a padlock to store his personal property caused him to be deprived

of "the minimal civilized measure of life's necessities."  Plaintiff has failed to state any claim that

would entitle him to relief under Section 1983 with respect to denial of a padlock.

Plaintiff has also failed to establish a constitutional deprivation based on the facility's policy

to keep cell doors locked while inmates are out of their cells.  He claims that once when he was at

recreation he had to "hold it" for an hour while waiting for a correctional officer because he could

not access the toilet in his cell.  Plaintiff has failed to establish that this security policy deprived him

of the minimal civilized measure of life's necessities or that he was injured in any way. This type

policy falls within the discretion prison officials must use in carrying out legitimate penological

interests. *See, e.g., Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998)(prison regulations claimed to

infringe constitutional rights will be upheld if in place for legitimate penological interests).  Not only

did this policy negate the need for a padlock, it also addresses a safety concern since inmates could

potentially hide themselves or contraband in unlocked cells.

## A JACKET IN THE DAY ROOM

Finally, Defendants argue that summary judgment is warranted as to Plaintiff's claim about

his jacket as well.  Plaintiff alleges that he was uncomfortably cold in the day room because he was

not allowed to wear his MDOC-issued jacket.  Plaintiff testified that he was allowed to wear his

jacket in his cell and outside. [34-1] at 8-10.  He was informed that jackets are not allowed in the

day room because of the security risk.  *Id.*  Officers explained to him that there had been incidents in the day room and that jackets could be used to hide weapons.  *Id.*  Moreover, Plaintiff does not have to go to the day room unless he wants to watch television.  *Id.*  The Fifth Circuit has held that uncomfortable prison temperatures alone do not constitute a constitutional violation.  *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).   Plaintiff has failed to state a claim regarding not being allowed to wear his jacket in the day room.

CONCLUSION

Based on the foregoing the Court hereby grants both motions [32, 34] filed by Defendants. The unexhausted claims are dismissed without prejudice and the exhausted claims are dismissed with prejudice.  A separate judgment will be entered.

SO ORDERED, this the 2nd day of December, 2014.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE